**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Brandie Crane,<br><br>       Plaintiff,<br><br>v.<br><br>TransUnion LLC, Experian Information Solutions, Inc., Equifax Information Services LLC, and Centra Credit Union,<br><br>       Defendants. | Civil Action No: 1:23-CV-00374<br><br><br>**COMPLAINT AND**<br><br><br>**DEMAND FOR JURY TRIAL** |

## <u>COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>

### INTRODUCTION

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3.  Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.  The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.  Brandie Crane ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants TransUnion LLC ("TU"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and Centra Credit Union ("Centra") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information and Defendants' failure to properly investigate Plaintiff's dispute(s).

9.  Defendants failed to properly investigate Plaintiff's dispute, damaging Plaintiff's creditworthiness.

10. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

11. Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

12. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

13. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

14. Jurisdiction of this Court arises under 28 U.S.C. § 1311 and pursuant to 15 U.S.C. § 1681 *et seq.*

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

16. Plaintiff resides in this District.

## PARTIES

17. Plaintiff is an adult individual and is "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

18. Defendant TU is a business entity doing business in the Southern District of Indiana.

19. Defendant TU's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

20. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

21. Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

22. Defendant Experian is a business entity doing business in the Southern District of Indiana.

23. Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

24.    Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

25.    Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

26.    Defendant Equifax is a business entity doing business in the Southern District of Indiana.

27.    Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

28.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

29.    Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

30.    Defendant Centra is an entity doing business in the Southern District of Indiana.

31.    Defendant Centra's registered agent address is: Dave Mann, 3801 Tupelo Dr., Columbus, IN 47202.

32.    The creditor named herein, Centra, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

33.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

34.  Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

35.  Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

## FACTUAL ALLEGATIONS

36.  On or about December 29, 2021, Plaintiff purchased a car that was secured by a loan held by Centra (the "Debt").

37.  On or about July 8, 2022, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana.

38.  Plaintiff's case was assigned Case Number 22-02656-RLM-7 (the "Bankruptcy").

39.  On or about August 8, 2022, Plaintiff entered into a reaffirmation agreement on the Debt with Centra.

40.  The reaffirmation agreement was subsequently filed in the Bankruptcy.

41.  On or about September 9, 2022, Plaintiff filed a recission of the reaffirmation agreement on the Debt with Centra.

42.  The result of the recission of the reaffirmation agreement was to cause the Debt to be discharged in the Bankruptcy upon completion of the Bankruptcy.

43.  On or about October 4, 2022, Plaintiff received an Order for discharge in the Bankruptcy.

44.  As a result of the Order for discharge, the Debt was discharged in the Bankruptcy.

45.    Defendants received notice of the discharge in the Bankruptcy.

46.    However, after the discharge in the Bankruptcy, Defendants continued to report derogatory information that was inaccurate, incomplete, and/or materially misleading.

47.    It is improper for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

48.    However, Defendants either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Debt after the Bankruptcy as discussed herein.

### *Metro 2 Reporting Standards*

49.    Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

50.    The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

51.    Metro 2 requires that accounts discharged in bankruptcy be reported as discharged in bankruptcy.

52.    Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

53.    On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place reasonable policies and procedures to handle investigations of disputed information.

54. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting on the Debt after Plaintiff filed Bankruptcy as further set forth below.

55. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

56. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.     credit or insurance to be used primarily for personal, family, or household purposes;

    ii.    employment purposes; or

    iii.   any other purpose authorized under section 1681b.

57. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

58. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

59.    The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

60.    The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

61.    Defendants' inaccurate and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

62.    The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

63.    The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

64.    FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

65.    Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

66.    A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

67.    Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

68.    Here, the inaccurate, incomplete, and/or materially misleading reporting of the Debt as owing and past due adversely affects Plaintiff's FICO score.

69.    There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

70.    Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *TU and Centra's Reporting of the Debt on the TU Credit Report*

71.  Upon information and belief, on or before November 29, 2022, TU and Centra were reporting derogatory information about the Debt on Plaintiff's TU credit report.

72.  Specifically, the Debt was reporting as Open, with a balance of $43,738, a scheduled payment amount of $679, a past due amount of $679, and remarks that the Debt was a "Reaffirmation of Debt".

73.  Due to the recession filed in the Bankruptcy, Debt's inclusion the Bankruptcy, and the subsequent discharge in the Bankruptcy, TU and Centra should have reported the Debt as discharged in bankruptcy.

74.  It was inaccurate, incomplete, and/or materially misleading for TU and Centra to report that the Debt was open, with a balance, a scheduled payment amount, and a reaffirmation notation.

### *Experian and Centra's Reporting of the Debt on the Experian Credit Report*

75.  Upon information and belief, on or before November 29, 2022, Experian and Centra were reporting derogatory information about the Debt on Plaintiff's Experian credit report.

76.  Specifically, the Debt was reporting as Open, with a balance of $43,924 and a scheduled payment amount of $662.

77.  Due to the recession filed in the Bankruptcy, Debt's inclusion the Bankruptcy, and the subsequent discharge in the Bankruptcy, Experian and Centra should have reported the Debt as discharged in bankruptcy.

78.  It was inaccurate, incomplete, and/or materially misleading for Experian and Centra to report that the Debt was open, with a balance, and a scheduled payment amount.

### *Equifax and Centra's Reporting of the Debt on the Equifax Credit Report*

79.  Upon information and belief, on or before November 29, 2022, Equifax and Centra were reporting derogatory information about the Debt on Plaintiff's Equifax credit report.

80.  Specifically, the Debt was reporting as Open, with a balance of $43,924 and a scheduled payment amount of $662.

81.  Due to the recession filed in the Bankruptcy, Debt's inclusion the Bankruptcy, and the subsequent discharge in the Bankruptcy, Equifax and Centra should have reported the Debt as discharged in bankruptcy.

82.  It was inaccurate, incomplete, and/or materially misleading for Equifax and Centra to report that the Debt was open, with a balance, and a scheduled payment amount.

### *Plaintiff's Dispute to TU and Centra*

83.  On or after November 29, 2022, Plaintiff sent a letter to TU by certified mail to identify the inaccurate, incomplete, and/or materially misleading information on the Debt that was being reported on Plaintiff's TU credit report.

84.  In Plaintiff's dispute letter to TU, Plaintiff identified the Debt as improperly reporting a balance and past due payment, along with reaffirmation information.

85.  In Plaintiff's dispute letter, she stated that the reporting of the Debt was wrong, as it was included in her bankruptcy and discharged.

86.  Plaintiff included a copy of her discharge order attached to her dispute letter.

87.  Plaintiff's dispute letter was in accord with 15 U.S.C. § 1681i as the dispute notified TU of the incorrect, incomplete, and/or materially misleading credit information on her credit report.

88.  TU was required to conduct an investigation into the Debt on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

89. TU was required to send notice of Plaintiff's dispute to Centra, pursuant to 15 U.S.C. § 1681i(a)(2).

90. Upon information and belief, TU notified Centra of Plaintiff's dispute.

91. Upon information and belief, Centra received notice of Plaintiff's dispute to TU as to the reporting of the Debt on the TU credit report.

92. A reasonable investigation by TU would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on the TU credit report.

93. TU failed to conduct a reasonable investigation despite notice of the inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report from Plaintiff's dispute to TU.

94. A reasonable investigation by Centra would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's TU credit report.

95. TU and Centra failed to conduct a reasonable investigation.

96. Instead, TU and Centra re-reported the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's TU credit report.

### *Plaintiff's Dispute to Experian and Centra*

97. On or after November 29, 2022, Plaintiff sent a letter to Experian by certified mail to identify the inaccurate, incomplete, and/or materially misleading information on the Debt that was being reported on Plaintiff's Experian credit report.

98. In Plaintiff's dispute letter to Experian, Plaintiff identified the Debt as improperly reporting a balance and scheduled payment amount.

99.    In Plaintiff's dispute letter, she stated that the reporting of the Debt was wrong, as it was included in her bankruptcy and discharged.

100.    Plaintiff included a copy of her discharge order attached to her dispute letter.

101.    Plaintiff's dispute letter was in accord with 15 U.S.C. § 1681i as the dispute notified Experian of the incorrect, incomplete, and/or materially misleading credit information on her credit report.

102.    Experian was required to conduct an investigation into the Debt on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

103.    Experian was required to send notice of Plaintiff's dispute to Centra, pursuant to 15 U.S.C. § 1681i(a)(2).

104.    Upon information and belief, Experian notified Centra of Plaintiff's dispute.

105.    Upon information and belief, Centra received notice of Plaintiff's dispute to Experian as to the reporting of the Debt on the Experian credit report.

106.    A reasonable investigation by Experian would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on the Experian credit report.

107.    Experian failed to conduct a reasonable investigation despite notice of the inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report from Plaintiff's dispute to Experian.

108.    A reasonable investigation by Centra would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Experian credit report.

109.    Experian and Centra failed to conduct a reasonable investigation.

110.    Instead, Experian and Centra re-reported the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Experian credit report.

### *Plaintiff's Dispute to Equifax and Centra*

111.    On or after November 29, 2022, Plaintiff sent a letter to Equifax by certified mail to identify the inaccurate, incomplete, and/or materially misleading information on the Debt that was being reported on Plaintiff's Equifax credit report.

112.    In Plaintiff's dispute letter to Equifax, Plaintiff identified the Debt as improperly reporting a balance and scheduled payment amount.

113.    In Plaintiff's dispute letter, she stated that the reporting of the Debt was wrong, as it was included in her bankruptcy and discharged.

114.    Plaintiff included a copy of her discharge order attached to her dispute letter.

115.    Plaintiff's dispute letter was in accord with 15 U.S.C. § 1681i as the dispute notified Equifax of the incorrect, incomplete, and/or materially misleading credit information on her credit report.

116.    Equifax was required to conduct an investigation into the Debt on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

117.    Equifax was required to send notice of Plaintiff's dispute to Centra, pursuant to 15 U.S.C. § 1681i(a)(2).

118.    Upon information and belief, Equifax notified Centra of Plaintiff's dispute.

119.    Upon information and belief, Centra received notice of Plaintiff's dispute to Equifax as to the reporting of the Debt on the Equifax credit report.

120. A reasonable investigation by Equifax would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on the Equifax credit report.

121. Equifax failed to conduct a reasonable investigation despite notice of the inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report from Plaintiff's dispute to Equifax.

122. A reasonable investigation by Centra would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Equifax credit report.

123. Equifax and Centra failed to conduct a reasonable investigation.

124. Instead, Equifax and Centra re-reported the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Equifax credit report.

### *TU and Centra's Continued Reporting of the Debt after Plaintiff's TU Dispute*

125. On a TU report dated January 13, 2023 ("TU Post-Dispute Report"), TU and Centra failed to report accurate information about the Debt.

126. Instead, on the TU Post-Dispute Report, TU and Centra reported that, verified as of December 2022, the Debt was open, with a recent balance of $43,721, past due in the amount of $1,358, and held a 60-day late payment status.

127. The Debt was also identified with information stating "Reaffirmation of Debt" on the TU Post-Dispute Report.

128. On the TU Post-Dispute Report, the Debt did not note that it was discharged in the Bankruptcy.

129. TU and Centra reported this inaccurate, incomplete, and/or materially misleading information despite Plaintiff's written dispute to TU.

130. TU and Centra's reporting was inaccurate, incomplete, and/or materially misleading because the Debt was discharged in the Bankruptcy and Plaintiff did not owe any amount to Centra after October 4, 2022.

131. TU and Centra's failures were egregious in that TU and Centra received notice of Plaintiff's discharge in the Bankruptcy and also received a copy of the discharge order attached to Plaintiff's dispute letter to TU.

132. Despite this, TU and Centra's continued to report the Debt inaccurately, incompletely, and/or in a materially misleading way.

133. TU and Centra made it appear as though Plaintiff had financial obligations to Centra that Plaintiff did not in fact have.

134. TU and Centra continued their inaccurate, incomplete, and/or materially misleading reporting beyond the January 13, 2023 TU report, as on an TU report dated February 28, 2023, TU and Centra reported that the Debt was Open, had a pay status of 120 days past due, a past due amount of $2,716, a balance of $43,738, a monthly payment of $662, and that the Debt was a reaffirmation of debt.

### *Experian and Centra's Continued Reporting of the Debt after Plaintiff's Experian Dispute*

135. On a Experian report dated January 13, 2023 ("Experian Post-Dispute Report"), Experian and Centra failed to report accurate information about the Debt.

136. Instead, on the Experian Post-Dispute Report, Experian and Centra reported that, as of December 31, 2022, the Debt was open, with a recent balance of $43,738, past due in the amount of $2,037, and held a payment status of 90 days past due.

137.    On the Experian Post-Dispute Report, the Debt did not note that it was discharged in the Bankruptcy.

138.    Experian and Centra reported this inaccurate, incomplete, and/or materially misleading information despite Plaintiff's written dispute to Experian.

139.    Experian and Centra's reporting was inaccurate, incomplete, and/or materially misleading because the Debt was discharged in the Bankruptcy and Plaintiff did not owe any amount to Centra after October 4, 2022.

140.    Experian and Centra's failures were egregious in that Experian and Centra received notice of Plaintiff's discharge in the Bankruptcy and also received a copy of the discharge order attached to Plaintiff's dispute letter to Experian.

141.    Despite this, Experian and Centra continued to report the Debt inaccurately, incompletely, and/or in a materially misleading way.

142.    Experian and Centra made it appear as though Plaintiff had financial obligations to Centra that Plaintiff did not in fact have.

143.    Experian and Centra continued their inaccurate, incomplete, and/or materially misleading reporting beyond the January 13, 2023 Experian report, as on an Experian report dated February 27, 2023, Experian and Centra reported that the Debt was Open, had a past due balance amount of $2,716, a balance of $43,738, and a monthly payment of $662.

### *Equifax and Centra's Continued Reporting of the Debt after Plaintiff's Equifax Dispute*

144.    On and Equifax credit report dated December 8, 2022 ("Equifax Dispute Results"), Equifax and Centra failed to report accurate information about the Debt.

145.    On the Equifax Dispute Results, Equifax and Centra reported that, the Debt had a balance of $43,738, a past due amount of $1,358, a scheduled payment amount of $662, and held a payment status of 60-80 days past due.

146.    The Debt was also identified with information stating "Reaffirmation of Debt" on the Equifax Dispute Results.

147.    On the Equifax Dispute Results, the Debt did not note that it was discharged in the Bankruptcy.

148.    Equifax and Centra reported this inaccurate, incomplete, and/or materially misleading information despite Plaintiff's written dispute to Equifax.

149.    Equifax and Centra's reporting was inaccurate, incomplete, and/or materially misleading because the Debt was discharged in the Bankruptcy and Plaintiff did not owe any amount to Centra after October 4, 2022.

150.    Equifax and Centra's failures were egregious in that Equifax and Centra received notice of Plaintiff's discharge in the Bankruptcy and also received a copy of the discharge order attached to Plaintiff's dispute letter to Equifax.

151.    Despite this, Equifax and Centra continued to report the Debt inaccurately, incompletely, and/or in a materially misleading way.

152.    Equifax and Centra made it appear as though Plaintiff had financial obligations to Centra that Plaintiff did not in fact have.

153.    Equifax and Centra continued their inaccurate, incomplete, and/or materially misleading reporting beyond the January 13, 2023 Equifax report, as on an Equifax report dated February 27, 2023, Equifax and Centra reported that the Debt was Open, over 120 days

past due, had a past due balance amount of $2,716, a balance of $43,738, a monthly payment of $662, and that the account was a reaffirmation of debt.

### *Defendants' Failures and Plaintiff's Damages*

154.  It is inaccurate, incomplete, and/or materially misleading to report an account is open when that account was discharged in bankruptcy.

155.  It is inaccurate, incomplete, and/or materially misleading to report an account has a balance when that account was discharged in bankruptcy.

156.  It is inaccurate, incomplete, and/or materially misleading to report an account is past due when that account was discharged in bankruptcy.

157.  It is inaccurate, incomplete, and/or materially misleading to report an account has a past due balance owed when that account was discharged in bankruptcy.

158.  It is inaccurate, incomplete, and/or materially misleading to report an account has a monthly payment amount when the account was discharged in bankruptcy.

159.  It is inaccurate, incomplete, and/or materially misleading to report an account was reaffirmed when a reaffirmation was rescinded by the consumer.

160.  As evidenced by TU's failure to report accurate information after the Bankruptcy despite receiving multiple notices of the Bankruptcy discharge and having access to Plaintiff's publicly available bankruptcy information, TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

161.  As evidenced by Experian's failure to report accurate information after the Bankruptcy despite receiving multiple notices of the Bankruptcy discharge and having access to Plaintiff's publicly available bankruptcy information, Experian failed to follow reasonable procedures

to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

162.  As evidenced by Equifax's failure to report accurate information after the Bankruptcy despite receiving multiple notices of the Bankruptcy discharge and having access to Plaintiff's publicly available bankruptcy information, Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

163.  As evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff disputes to TU, Experian, and Equifax identifying the inaccurate information related to the Debt, Defendants, upon receipt of Plaintiff's disputes, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

164.  Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

165.  Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

166.  Defendants' continued inaccurate and/or materially misleading reporting on the Debt in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

167.  Defendants' failure to comply with Metro 2 also indicates their actions were willful.

168. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

169. Based upon Defendants' knowledge of the Debt, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

170. Defendants' continued inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, out-of-pocket expenses in challenging Defendants' reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and emotional distress.

171. Plaintiff filed for bankruptcy in an effort to clean up her credit, but Plaintiff believes her ability to secure a lease on a home for her family that is closer to her employment has been harmed by Defendants' inaccurate reporting on the Debt.

172. Plaintiff has not applied for credit because she believes she will be denied as a result of Defendants' inaccurate credit reporting of the Debt.

173. Plaintiff has not received credit pre-approval letters and she believes that is a result of Defendants' inaccurate credit reporting of the Debt.

174. Plaintiff is extremely frustrated that despite her disputes to Defendants as well as multiple calls to Centra regarding the Debt, Defendants have failed to correct the credit reporting on the Debt and Centra continues to send harassing collection letters to Plaintiff.

175. Plaintiff suffers anger and humiliation as she believes third parties have accessed her credit reports and have seen the false credit reporting on the Debt.

176.    Defendants' inaccurate credit reporting on the Debt has aggravated a pre-existing mental health issue and Plaintiff believes her mood swings have increased and she has been quicker to anger, distraction, and aggravation.

177.    Plaintiff's emotional distress resulting from Defendants' inaccurate credit reporting on the Debt is compounded by Centra's refusal to take possession of the car that secured the original loan, and Plaintiff's ongoing insurance payments to insure the car.

178.    Plaintiff has incurred out of pocket expenses in her unsuccessful attempts to correct Defendants' false credit reporting on the Debt.

179.    By reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

180.    Defendants' actions and omissions have caused Plaintiff's credit report to falsely indicate that Plaintiff tens of thousands of dollars on the Debt and was past due on her obligations.

181.    Creating the false impression of Plaintiff owing on the Debt creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's Experian credit reports that is engaged in judgment-based lending.

182.    Plaintiff's credit reports were also published to third parties while the derogatory information complained about herein was present on Plaintiff's credit reports.

183.    Defendants therefore caused a defamation-type harm upon Plaintiff.

184.    By reporting inaccurate and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

## FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

185.    Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

186.    The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i, and 15 U.S.C. § 1681s-2(b).

187.    The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

188.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

189.    In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

190.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

191.    Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against each Defendant;

4. Punitive damages against each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorneys' fees against each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) and/or 15 U.S.C. § 1681n(a)(3); and

6. Any other relief the Court may deem just and proper.


Dated: March 3, 2023

Respectfully Submitted,


By: _/s/Richard J. Shea_

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com